# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN BOARD OF INTERNAL MEDICINE | : CIVIL ACTION :  :  |
| vs. | : NO. 10-CV-2676 : |
| MONICA MUKHERJEE, M.D. | : |

### MEMORANDUM AND ORDER

**JOYNER, J.**                                                          **January 24, 2011**

This civil action has been brought before the Court on Motion of the Defendant, Monica Mukherjee, M.D. to Dismiss the Plaintiff's Complaint for Lack of Personal Jurisdiction. Based upon the rationale set forth below, the Motion shall be granted in part and denied in part.

### Factual Background

The instant case is one of a series of lawsuits commenced on June 4, 2010 by Plaintiff, the American Board of Internal Medicine ("ABIM") against several individual physicians who it alleged had copied and disseminated its "secure, copyrighted Examination items" from its Certifying Examination in Internal Medicine.[1] Immediately prior to the filing of these actions, the plaintiff settled the action which it had instituted some six

---

[1] In addition to the instant action, the other matters are: <u>American Board of Internal Medicine v. Salehi</u>, No. 10-CV-2677, <u>American Board of Internal Medicine v. Todor</u>, No. 10-CV-2678, <u>American Board of Internal Medicine v. Oni</u>, No. 10-CV-2679 and <u>American Board of Internal Medicine v. Von Muller</u>, No. 10-CV-2680.

months earlier against Dr. Rajender Arora and the Arora Board Review with the entry of a permanent injunction by consent. That injunction forever prohibited the named defendants and their agents, officers, servants and/or employees from creating, reproducing, copying, distributing, selling and otherwise using or displaying "any materials of any kind and in any medium that infringe ABIM's copyrights in its Certifying Examinations and/or Maintenance of Certification Examinations in Internal Medicine and/or any subspecialties of Internal Medicine..." See, e.g., Permanent Injunction filed June 11, 2010 in ABIM v. Arora, et. al., No. 09-CV-5707 (Dkt. No. 23).

As in its complaints in the other actions, Plaintiff here asserts that Defendant Mukherjee wilfully infringed and misappropriated its trade secret, copyright-protected board certification examination questions by emailing some 500 of the examination questions which she and her friends had assembled from the August 17, 2009 certification examination to Dr. Arora. Plaintiff avers that Dr. Mukherjee knew that such actions were unlawful and in breach of ABIM's "Pledge of Honesty" which she electronically signed prior to taking the examination and "in which she promised not to disclose, copy or reproduce any portion of the material contained in the Examination. At the conclusion of the Examination, Mukherjee was reminded that sharing information about the Examination undermines the certification

process and that ABIM would impose severe penalties on anyone who engaged in such improper conduct." (Complaint, ¶36).

Because Dr. Mukherjee alleges that she is a resident of Washington, D.C. and a permanent citizen of Florida, she contends that this Court does not have *in personam* jurisdiction in this matter. She therefore moves to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(2).

### **Standards Applicable to Rule 12(b)(2) Motions**

Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577, 119 S. Ct. 1563, 1567, 143 L. Ed. 2d 760 (1999). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998), quoting Ex parte McCardle, 7 Wall. 506, 514, 19 L. Ed. 264 (1868). Hence, the validity of an order of a federal court depends upon the court's having jurisdiction over both the subject matter and the parties. Insurance Corporation of Ireland v. Compagnie Des Bauxites, 456 U.S. 694, 701, 102 S. Ct. 2099,

2103, 72 L. Ed. 2d 492 (1982), citing, *inter alia*, Stoll v. Gottlieb, 305 U.S. 165, 171-172, 59 S. Ct. 134, 137-138, 83 L. Ed. 104 (1938).

A defendant has the burden of raising the defense of lack of personal jurisdiction; failure to do so renders it waived. TES Franchising, LLC v. Dombach, 2010 U.S. Dist. LEXIS 130314, at *3 (E.D. Pa. Dec. 9, 2010); Poole v. Sasson, 122 F. Supp. 2d 556, 557 (E.D. Pa. 2000); Fed. R. Civ. P. 12(h)(1). Under Fed. R. Civ. P. 12(b)(2), the defense of insufficient personal jurisdiction may be raised by filing a motion for dismissal. Should that occur, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendant(s) by affidavits or other competent evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002); Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). If the court does not hold an evidentiary hearing on the motion, the plaintiff need only establish a prima facie case of personal jurisdiction. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). Moreover, "it is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." Metcalfe, supra, quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446,

457 (3d Cir. 2003).

## Discussion and Analysis

Under Fed. R. Civ. P. 4(e), a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Eurofins Pharma U.S. Holdings v. Bioalliance Pharma, 623 F.3d 147, 155 (3d Cir. 2010). Whether a district court has personal jurisdiction over a nonresident defendant is a two-part inquiry. Id. First, there must be a statutory basis for exercising jurisdiction over the nonresident defendant in accordance with the law of the forum state; second, the nonresident must have minimum contacts with the forum state sufficient to satisfy constitutional due process. Id., citing Metcalfe, 566 F.3d at 330. In Pennsylvania, the long arm statute provides that its courts' jurisdiction, in addition to existing over a person who transacts any business, does any act, owns any property, etc.,

> "...shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."

42 Pa. C. S. A. §5322(b). Thus, Pennsylvania's long arm statute has been interpreted as authorizing Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limit of the due process clause of the fourteenth

5

amendment. Wolk v. Teledyne Industries, Inc., 475 F. Supp. 2d 491, 503 (E.D. Pa. 2007), citing Mellon Bank (East) PSFS Nat'l Assn. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

There are two types of personal jurisdiction - general jurisdiction and specific jurisdiction. D'Jamoos v. Pilatus Aircraft, Ltd., 566 F.3d 94, 102 (3d Cir. 2009). General jurisdiction is based upon the defendant's "continuous and systematic" contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). In contrast, specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum." Id., quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) and Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996). Such a determination is claim specific because a conclusion that the District Court has jurisdiction over one of the defendants as to a particular claim does not necessarily mean that it has personal jurisdiction over that same defendant as to another claim. Remick, supra.

Insofar as the plaintiff here argues only that this court has specific jurisdiction over the defendant, we undertake the

6

prescribed three-part inquiry to determine whether there is specific jurisdiction. See, D'Jamoos, supra.; O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposefully directed its activities" at the forum. D'Jamoos, and O'Connor, both supra, and citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985). Second, the litigation must "arise out of or relate to" at least one of those activities. D'Jamoos, supra, citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984) and O'Connor, 496 F.3d at 317. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with 'fair play and substantial justice.'" O'Connor, 496 F.3d at 317, quoting Burger King, 471 U.S. at 476 and International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945). Alternatively, "even when the defendant's contacts with the forum alone are far too small to comport with the requirements of due process under [this] traditional analysis," a plaintiff may demonstrate personal jurisdiction if he or she shows:

> (1) the defendant committed an intentional tort;
>
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal

point of the tortious activity.

Marten v. Godwin, 499 F.3d 280, 297 (3d Cir. 2007), quoting IMO Industries v. Kiekert, AG, 155 F.3d 254, 259, 265-66 (3d Cir. 1998) and citing Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

In the complaint in this case, the plaintiff asserts that this court possesses subject matter jurisdiction on the bases of federal question and original jurisdiction to hear claims relating to patents, copyrights and trademarks. See, 28 U.S. C. §§1331, 1338. Personal jurisdiction, in turn, is premised here upon Dr. Mukherjee's alleged Pennsylvania citizenship "at the time she engaged in some or all of the unlawful conduct that is the subject of the instant action." (Complaint, ¶s5-6). Further, Plaintiff avers that this Court has personal jurisdiction over the defendant "because she directed tortious conduct to the Commonwealth of Pennsylvania by willfully infringing ABIM's copyright Examination and willfully misappropriating trade secrets of ABIM, and by violating her confidentiality agreement entered into with ABIM, which is headquartered in Pennsylvania." (Complaint, ¶7). Indeed, Plaintiff asserts three claims for relief against the defendant in the case at bar: copyright infringement (Count I), misappropriation of trade secrets (Count II) and breach of contract (Count III).

Endeavoring to make the necessary *prima facie* showing of personal jurisdiction, Plaintiff has attached a declaration from its Senior Vice President and Chief Operating Officer, Lynn O. Langdon.  Ms. Langdon's declaration asserts the following jurisdictional facts:

- ABIM is headquartered in Philadelphia, Pennsylvania.

- All fees paid to ABIM during the Board Certification process may either be submitted to ABIM via its internet website at [www.abim.org](www.abim.org) or mailed to its address in Philadelphia.

- ABIM grants Board Certification only to those physicians who, *inter alia*, have successfully completed three years of accredited, post-graduate training in internal medicine and its subspecialties, and who then pass a secure, proctored examination in Internal Medicine.  Without having first completed a medical residency, a physician may not sit for an ABIM examination.

- When a candidate becomes Board Certified in Internal Medicine or in a subspecialty, they enter into an ongoing relationship with ABIM.  Board Certification presently lasts 10 years.

- During that 10-year period, physicians who are Board Certified in Internal Medicine must comply with ABIM's Maintenance of Certification requirements, of which there are three core elements: (1) completion of self-evaluation modules, (2) possession of a verified medical license, and (3) passing additional, secure, computer-based examinations.  Although previously, physicians could receive these modules in hard copy format or on CD-ROM, they now are available only over the Internet.  Physicians who complete the self-evaluation modules can still pay for them by mailing a check to ABIM's Philadelphia offices or through the website.

- The completed self-evaluation modules are graded by ABIM staff at its Philadelphia headquarters.  All records related to the accumulation of self-evaluation

9

- credits are maintained in Philadelphia at ABIM's headquarters.

- ABIM maintains an "item bank" of "live" questions from which it selects examination questions. This "item bank" is stored on both computers and hard copies in ABIM's Philadelphia offices.

- On January 14, 2009, Dr. Mukherjee spoke with ABIM staff members on the phone seeking advice as to how to log onto the ABIM website. These staff workers were located in Philadelphia, Pennsylvania.

- The following day, ABIM staff members received an email from Dr. Mukherjee, sent from an email account issued by Drexel University which is affiliated with Hahnemann Hospital and located in Philadelphia, Pennsylvania. An ABIM staff member responded to Dr. Mukherjee's question and provided her with information regarding registration for the Certifying Examination in Internal Medicine.

- Dr. Mukherjee registered to sit for the August, 2009 Certifying Examination in Internal Medicine on January 15, 2009, paying the required fee, which was received and processed by ABIM's staff members at its offices in Philadelphia.

- When Dr. Mukherjee registered for the August, 2009 Certifying Examination in Internal Medicine, she provided ABIM with a mailing address located in Philadelphia, Pennsylvania. ABIM subsequently sent correspondence to Dr. Mukherjee at this address in Philadelphia, including notification that she had passed the Certifying Examination in Internal Medicine.[2]

---

[2] In addition to these averments, Ms. Langdon's declaration includes several numbered paragraphs in which she claims, *inter alia,* to have "been advised" that the authors of several of the Microsoft Word documents attached to Dr. Mukherjee's email to Dr. Arora were physicians who were former colleagues from Drexel University, that at least one of the documents was created on a computer located at Drexel University, and that two other documents were sent to one or more physicians located in Philadelphia. Given that statements in an affidavit only have value when they are based on the affiant's personal knowledge or are admissible for some other reason, we find that these paragraphs do not constitute credible evidence for purposes of satisfying plaintiff's burden of showing that personal jurisdiction is proper. See, e.g., Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 537, n.6 (3d Cir. 1994); Correctional Medical Care, Inc. v. Gray, 2008 U.S.

According to the defendant's declaration, she considers herself to be a citizen of Florida, as that is where she was born in 1979, where she grew up, where her parents continue to reside, where she attended college and the state to which she intends to return. She is and has always been licensed to drive in Florida and has always been a registered Florida voter. She attended medical school at the George Washington University School of Medicine in Washington, D.C., which is where she is now engaged in a three-year cardiology fellowship and hence, where she has resided since July, 2009. Dr. Mukherjee declares that she attended the Arora Board Review course in New York City in May, 2009 and that she took the ABIM certification examination at a testing center in Washington, D.C. in August, 2009. The email in which she is alleged to have forwarded test questions to Dr. Arora was alleged to have been sent on October 22, 2009, when she resided in Washington, D.C. Although the defendant further attests that she has never had a bank account or owned any real estate or other property in Pennsylvania and that the only contact that she has with Pennsylvania presently consists of occasional visits to her sister in Reading, Pennsylvania, she does not dispute that between June 2006 and June 2009, she

---

Dist. LEXIS 6596 at *29 (E.D. Pa. Jan. 30, 2008); Agnello v. Paragon Development, Ltd., 2008 U.S. Dist. LEXIS 33 at *11-*12, n.2 (W.D. Pa. Jan. 2, 2008); Burns v. Lavendar Hill Farm, 2002 U.S. Dist. LEXIS 21826 at *10-*11 (E.D. Pa. Oct. 30, 2002); Green Keepers, Inc. v. Softspikes, Inc., 1998 U.S. Dist. LEXIS 15157 at *3 (E.D. Pa. Sept. 23, 1998).

resided in Philadelphia while she did her medical residency at Hahnemann University Hospital, nor does she deny that she registered to take the ABIM Board certification examination in January, 2009, while a resident of Pennsylvania or that she registered for the examination online from Pennsylvania and using her drexelmed.edu email account.

To determine the existence of personal jurisdiction over a breach of contract claim, a court "must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Leone v. Cataldo, 574 F. Supp. 2d 471, 478 (E.D. Pa. 2008), quoting Remick v. Manfredi, 238 F.3d at 256. Thus, actual presence during pre-contractual negotiations, performance, and resolution of post-contract difficulties is generally factored into the jurisdictional determination. General Electric Company v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach and take into account prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. Id.; Mellon Bank v. Farino, 960 F. at 1224.

In application of the foregoing, we note that the alleged

12

contract at issue is the confidentiality agreement which every candidate for board certification signs when they take ABIM's examinations and by which they agree to keep the contents of the examination a secret. While it does not appear that these parties conducted any negotiations into the terms of this agreement, it does appear to be undisputed that at the time that she registered for the examination and thereby entered into a relationship with ABIM, Dr. Mukherjee was and had been a resident of Pennsylvania for the preceding 2 ½ years, that in furtherance of that relationship, she gave ABIM a Pennsylvania-based email address and postal address, and that it was to that postal address that the results of her examination were sent. The record also reflects that Defendant paid the registration fee to ABIM and that the fee and her application to take the exam were received and processed at ABIM's offices in Philadelphia. These contacts are, we find, sufficient to confer personal jurisdiction over Defendant for purposes of the plaintiff's breach of contract claim. We therefore deny the motion to dismiss with respect to Count III of the complaint.

Turning next to the plaintiff's copyright infringement and misappropriation counts, we note that to establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work. Kay Berry, Inc. v. Taylor

13

Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005). Copying is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. §106." Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc., 307 F.3d 197, 206 (3d Cir. 2002), quoting Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 291 (3d Cir. 1991).[3] Generally speaking, a defendant of a copyright claim "may be found" wherever the defendant is amenable to personal jurisdiction. Blackburn v. Walker Oriental Rug Galleries, 999 F. Supp. 636, 638 (E.D. Pa. 1998).

Similarly, "misappropriation" of a trade secret[4] under the

---

[3] 17 U.S.C. §106 now provides for six "exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."

[4] "Trade secret" is defined in 12 Pa.C.S.A. §5302 as being:

"Information, including a formula drawing pattern, compilation including a customer list, program, device, method, technique or process that:

(1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

14

Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. §5301, *et. seq.* includes:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of another without express or implied consent of a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>
>>> (A) derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

12 Pa. C.S.A. §5302.

Here, it appears that ABIM has filed its annual examinations with the Register of Copyrights and the United States Copyright Office pursuant to its procedures for copyrighting secure tests under 37 C.F.R. §202.20(b)(4) and that it has received

---

> by proper means by, other persons who can obtain economic value from its disclosure or use,
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Certificates of Registration for its annual secure Examinations since 1986. Given that it requires all test participants to sign and/or electronically sign the confidentiality pledge as a pre-condition to sitting for its certification examinations, ABIM obviously endeavors to keep its test questions and examination materials secret. However as to this defendant, the record evinces that Defendant Mukherjee took the Arora Board Review course in New York City, that she took the August, 2009 Internal Medicine Board Certification Examination at a testing center in Washington, D.C. and that the email that allegedly unlawfully transmitted the secret, copyrighted test questions was sent from Defendant's computer in Washington, D.C. to Dr. Arora's computer in New Jersey. Nowhere in either the plaintiff's complaint or in any of the affidavits submitted as evidence in this case is there any indicia of a connection between, or an "effect" of, the defendant's alleged copyright infringement or misappropriation of the plaintiff's trade secrets and this forum. As a consequence, we are constrained to grant the defendant's motion to dismiss for inadequate *in personam* jurisdiction over Counts I and II of the complaint.

An order follows.